Durkin Contracting Company *v.* Zoning Board of Adjustment.

Argued May 2, 1972, before Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. President Judge Bowman did not participate.

*James M. Penny, Jr.,* Assistant City Solicitor, with him *John Mattioni,* Deputy City Solicitor, and *Martin Weinberg,* City Solicitor, for appellant.

*John E. Tuohy,* with him *Charles V. Stoelker, Jr.,* and *Meehan & Stoelker,* for appellee.

Opinion by Judge Crumlish, Jr., July 26, 1972:

This case is before us on appeal by the Zoning Board of Adjustment of Philadelphia (Board) from a decision of the Court of Common Pleas of Philadelphia County which directed the Board to grant a variance requested by appellee, Durkin Contracting Company.

On March 10, 1971, Durkin had applied for a zoning permit for a parcel of land approximately 175 by

150 feet located on the southeast corner of Grant Avenue and Ashton Road. The application sought allowance for use as a one-story gasoline station, with parking, lights and signs in a district zoned L-2 Light Industrial. The Department of Licenses and Inspections refused to issue this permit because the proposed use was not permitted in an L-2 district.

An appeal was taken to the Board which, after a hearing,[1] refused to grant the variance. The Court of Common Pleas granted a writ of certiorari and held a new hearing at which additional testimony was taken. The court reversed the decision of the Board and ordered that a variance be granted. That decision has been appealed to this Court and we are of the opinion that the decision and order of the lower court must be affirmed.

The Board, in this appeal, proffers two contentions: (1) that it was an abuse of discretion for the Court of Common Pleas to take additional testimony because no compelling circumstances existed which would necessitate additional testimony; and (2) that there were not exceptional circumstances present in this case which would constitute the unnecessary hardship requisite to the issuance of a zoning ordinance.

With respect to the taking of additional testimony, appellant recognizes that in this instance by Act of May 6, 1929, P. L. 1551, §8, 53 P.S. §14759, the courts of common pleas have the power to take additional testimony. Appellant simply contends that there was no necessity to do so in the instant situation.

Examination of the record before the Board reveals that the City Planning Commission, in its recommendation to the Board, made after the Board's hearing, concluded that the area was adequately served with gaso-

---

[1] It is significant to note that no one was present at the hearing to protest or petition against the request for the variance.

line stations. The hearing, however, had been completely devoid of evidence relating to this point. The Zoning Board made a conclusion of law that traffic congestion would substantially increase if the variance were granted. The record reveals only one minor allusion to traffic at the Board's hearing. There was also minimal discussion at that hearing as to the topography of the parcel and its suitability of development under the existing zoning classification. The lower court admitted additional evidence relating to all of these areas and, because of the sparseness of the record on these points of reliance by the Board, it was not an abuse of discretion for the court to do so.

Having properly considered additional testimony, the duty of the court below was to hear the case de novo and to determine the case on its merits, rather than to determine whether the Board had committed an abuse of discretion.[2] *Richman v. Zoning Board of Adjustment,* 391 Pa. 254, 137 A. 2d 280 (1958) ; *Pantry Quik, Inc. v. Zoning Board of Adjustment,* 1 Pa. Commonwealth Ct. 326, 274 A. 2d 571 (1971). On appeal to this Court, our scope of review is to determine whether the court below, and not the Board, committed an error of law or abused its discretion. *Pyzdrowski v. Pittsburgh Board of Adjustment,* 437 Pa. 481, 263 A. 2d 426 (1970) ; *Boyd v. Wilkins Township Board of Adjustment,* 2 Pa. Commonwealth Ct. 324, 279 A. 2d 363 (1971) ; *Pantry Quik, supra.*

---

[2] In the instant case, the court below recognized that it could take additional testimony and decide the case de novo. The court in addition to deciding that the variance should be granted on the merits, also noted that even without additional evidence, the variance should have been granted because the Board had committed an abuse of discretion. The fact that the court did discuss abuse of discretion by the Board is not conclusive proof that it used the wrong scope of review in resolving the case, especially where the court's opinion also disposes of the appeal upon proper grounds.

We recognize that in order for a variance to issue, the applicant must show (1) unnecessary hardship which is unique or peculiar to the property involved as distinguished from the hardship imposed upon the entire district, and (2) that the proposed variance is not contrary to the public health, safety, moral or general welfare. *Jacobs v. Philadelphia Zoning Board of Adjustment,* 1 Pa. Commonwealth Ct. 197, 273 A. 2d 746 (1971).

The evidence produced before the lower court revealed that the property is located at the corner of Ashton Road, which is four lanes curb to curb, and Grant Avenue which is six lanes curb to curb with a median divider. A survey that was conducted showed that use of that intersection is presently at two-thirds capacity in terms of traffic flow. Combined with this was unrefuted expert testimony to the effect that gas stations do not generate traffic and merely service passing traffic.

The testimony of a representative of a major oil company revealed that in his opinion the area was not saturated with gasoline stations and that one at this location would be economically feasible. All of this testimony was unrefuted and no evidence was presented which tended to show that this station would create a hazard of any type.

The property in question is located in a block along with the garage and office building of a construction company, two operating service stations, a tavern-restaurant, and an apartment complex. Across Grant Avenue to the north is Northeast Airport. Diagonally across to the northwest is part of the airport complex along with an overhead door company, a children's goods retail outlet and a photography studio. Across Ashton Road to the west are located two container manufacturing companies, a food distributing center, a hauling service and an operating service station. The

216

court below concluded, on the basis of this evidence, that the proposed use was less noxious and harmful to the area than many already existing uses and would not be contrary to public health, safety or general welfare. We agree.

There was further testimony by a real estate expert to the effect that if the setbacks as delineated in the ordinance in an L-2 district are deducted from the parcel the usable property would be 113 feet by eighty-eight feet and within this area there must exist in addition to any building, the required off-street parking if the lot is to house a permitted L-2 use. This expert opined that the initial size of the lot along with these restrictions would severely limit any industrial use that could be made there.[3] This testimony was also unrefuted. We are of the opinion that the lower court did not err in concluding that this evidence sufficiently supported Durkin's contention that there was a unique hardship.

Finally, there is no merit to appellant's contention that the hardship in this instance was self-inflicted because Durkin also owned a larger adjoining tract.[4] A garage and offices had been established on the adjoining property for some time. The mere fact that Durkin owns this adjoining property certainly does not lead by itself, to the conclusion that this hardship was self-inflicted.

The order of the lower court is affirmed.

---

[3] The real estate expert testified that in an L-2 district a building would have to be much larger than what would be possible on this lot once it is reduced according to the set back requirements.

[4] There were no arguments presented to the Board or the lower court on this matter. According to *Wynnewood Civic Association v. Lower Merion Township Board of Adjustment*, 406 Pa. 413, 179 A. 2d 649 (1962), this matter need not be considered by this court on appeal. Testimony before the Board as to who owned the adjoining property certainly is not raising this issue nor addressing argument toward it. We will, however, dispose of the question.

DISSENTING OPINION BY JUDGE ROGERS:

The appellee, Durkin Contracting Company, conducts a conforming contracting business on a parcel of land located in an L-2 zoning district of Philadelphia. By drawing lines on a plot plan of its property, it has created a paper lot at a street intersection, which it desires to rent or sell to the Shell Oil Company for a gasoline service station. Service stations are not permitted in the L-2 district. These facts were established by photographs of record showing appellee's office, contractor's yard and the residence surrounding the proposed location of the gasoline station, and by statements of appellee's counsel made to the Zoning Hearing Board, as follows: "Immediately east of the subject premises is the yard, garage and office of Durkin Contracting Company. . . . There is immediately south of the subject premises a residence. That residence is owned by Durkin Contracting, which is the owner of the subject . . . [premises]." The circumstances, therefore, are no different from those which would obtain were the owner of a house and lot in a residential district to claim by variance the right to use a portion of his front lawn for a commercial purpose because of that portion's inadequacy to accommodate another residence. The appellee would not be entitled to a variance even if this "lot" were real and consisted of the remainder of its property after conveyance of the balance of its ground. *Volpe Appeal,* 384 Pa. 374, 121 A. 2d 97 (1956). *A fortiori,* it is not entitled to a variance where, as here, the lot is a part only of its lands.

This issue *was* raised in the court below. The arguments of counsel were transcribed and the City Solicitor contended:

"The other requirement is, of course, hardship. It is not the kind of hardship which all of this testimony and all the oral judgment, which has been addressed, is not the kind of hardship which is necessary, and that is

not economic, but it has to be a serious, substantial compelling, almost confiscatory [hardship], which in fact means that the zoning regulations are so restrictive that they amount to take [sic] of the property and the property which the applicant owns, cannot be used for any other purpose than that which is now proposed. I don't think that is the case here. *The hardship is simply that the applicant has some vacant ground next to his plant and he wants to reap the greatest amount of financial profit that is possible.*

"*There was no evidence or any attempt to use this vacant piece of ground within the uses permitted.* There is no evidence presented that this piece of property was up for sale offering it for the proposed uses, which are within the L-2 designation." (Emphasis supplied.)

The fact that appellee is presently devoting its land to a use permitted in the L-2 zoning district negates the assertion that these use restrictions impose a hardship. The law does not entitle an owner to put each and every part of his land to profitable use. Indeed one of the principal purposes of zoning is to regulate the intensity of land use.

I dissent.

Judge BLATT joins in this opinion.

———

DISSENTING OPINION BY JUDGE BLATT:

Although I concur with the dissenting opinion of Judge ROGERS, I must also record my own disagreement with the majority's holding pertaining to unnecessary hardship, and would also query the failure of the court below to make findings of fact and conclusions of law after hearing the case de novo.

There is a heavy burden on the applicant in a variance case to prove that an unnecessary hardship will result if a variance is not granted. *Altemose Construction Company v. Zoning Hearing Board,* 3 Pa. Commonwealth Ct. 328, 281 A. 2d 781 (1971). The applicant

in this case, however, clearly did not carry that burden. Before the Zoning Board of Adjustment (Board), the applicant introduced no evidence tending to prove unnecessary hardship. At the hearing before the lower court, a real estate expert did testify on behalf of the applicant that the types of buildings which could be erected on this property were limited. But neither he, nor any other witness, at any time, testified that the property could not be used as zoned. As in *Marple Township Appeal*, 430 Pa. 113, 114, 243 A. 2d 357 (1968), where the record was "completely barren as to any evidence demonstrating that the land in question cannot possibly be used within the permissible uses enumerated under the present zoning classification . . .", we should hold as was held in that case that "[s]ince appellees have failed to so demonstrate, the variance should have been denied by the court below." Actually, far from producing evidence that the property could not be used within the permissible uses in an L-2 Industrial District, the applicant's witnesses were asked merely what the "highest and best use" would be for the property. Such testimony points only to the possibility of an economic hardship, and an "[e]conomic hardship does not constitute such a unique, unnecessary hardship peculiar to the property involved that will in itself justify the issuance of a variance. . . ." *DiSanto v. Zoning Board of Adjustment of Lower Merion Township*, 410 Pa. 331, 334, 189 A. 2d 135, 137 (1963).

When a community enacts a zoning ordinance it is presumed to have acted to establish a rationally planned system for land use, and the purpose of placing a heavy burden of proof on the applicant in variance cases is that a lesser standard would negate the plan of the zoning ordinance by permitting landowners to use their land for any use which they can show would be the most profitable. I would hope that the majority's opinion does not signal a turn from requiring the landowner

applicant for a variance to carry the heavy burden of proving "unnecessary hardship" to permitting the application of the lighter standard of "highest and best use."

The majority correctly points out that by considering additional testimony the lower court was required to hear the case de novo and to determine the case on its merits. The lower court appeared confused on this matter, however, as evidenced by the fact that it failed to include in its opinion any findings of fact and conclusions of law. "The obvious purpose in delineating the findings of fact is to facilitate appellate review. Likewise, the final decision shall contain conclusions of law." *Beebe v. Media Zoning Hearing Board and Hibberd*, 5 Pa. Commonwealth Ct. 29, 33, 288 A. 2d 557, 559 (1972).

I would hold that the lower court abused its discretion by granting a variance when the evidence was clearly insufficient to establish an unnecessary hardship. In the alternative, I would remand the case to the lower court in order to enable it to make findings of fact and conclusions of law so that we might have a complete record to review.